TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective and potential Rule 23 Class*

<u>Case No.</u> **18-cv-06175**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------**X**

JORGE SOLARES-GONZAGA,
*on his own behalf and on behalf of others similarly situated*

Plaintiff,
v.

ESSEN22 LLC
     d/b/a Essen Food;
AMICI 519 LLC
     d/b/a Essen Food;
BNP NY FOODS, INC
     d/b/a Essen Food;
27 MADISON AVENUE CORP
     d/b/a Essen Food;
TEN WESTSIDE CORP
     d/b/a Essen Food;
100 BROAD STREET LLC
     d/b/a Essen Food;
JANE DOE1,
JANE DOE2,
JOHN BYUN,
CHONG WON BYUN,
WILLIAM BYUN,
MYONG AE BAEK BYUN,
K.C. CHOI,
SUNG CHOI,
YOUNG CHOI,
KYEONG T HWANG,
JOSEPHINE KIM,
ANGIE PARK
     f/k/a Eun Ju Park, and
HAE YUNG PARK

Defendants.
--------------------------------------------------------**X**

<u>29 U.S.C. § 216(b)</u>
<u>**COLLECTIVE ACTION &**</u>
<u>**FED. R. CIV. P. 23 CLASS**</u>
<u>**ACTION**</u>

**COMPLAINT**

Plaintiff JORGE SOLARES-GONZAGA (hereinafter referred to as Plaintiff), on behalf of himself and others similarly situated, by and through his attorney, Troy Law, PLLC, hereby brings this complaint against Defendants ESSEN22 LLC d/b/a Essen Food; AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food; JANE DOE1, JANE DOE2, JOHN BYUN, CHONG WON BYUN, WILLIAM BYUN, MYONG AE BAEK BYUN, K.C. CHOI, SUNG CHOI, YOUNG CHOI, JOSEPHINE KIM, KYEONG T HWANG, ANGIE PARK f/k/a Eun Ju Park, and HAE YUNG PARK, and alleges as follows:

## **INTRODUCTION**

1.      This action is brought by the Plaintiff JORGE SOLARES-GONZAGA, on behalf of himself as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law (NYLL), arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid wages and/or minimum wage, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.

4.     Plaintiff further alleges pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that he is entitled to recover from the Defendants: (1) unpaid wages and/or minimum wage compensation, (2) unpaid overtime compensation, (3) unpaid spread-of-hours premium, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (7) 9% simple prejudgment interest provided by NYLL, (8) post-judgment interest, and (9) attorney's fees and costs.

## **<u>JURISDICTION AND VENUE</u>**

5.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## **PLAINTIFF**

7.      From on or about March 01, 2015 to March 31, 2015 (for one month), and then from on or about October 15, 2016 to the present day, Plaintiff JORGE SOLARES-GONZAGA was employed by Defendants to work as a food preparer by AMICI 519 LLC d/b/a Essen Food at 290 Madison Avenue, New York, NY 10018 and by BNP NY FOODS, INC d/b/a Essen Food at 519 Eighth Avenue, New York, NY 10018.

## **DEFENDANTS**

### *Corporate Defendants*

8.      Defendant AMICI 519 LLC d/b/a Essen Food is a domestic business corporation organized under the laws of the State of New York with a principal address at 519 Eighth Avenue, New York, NY 10018.

9.      AMICI 519 LLC d/b/a Essen Food is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

10.      AMICI 519 LLC d/b/a Essen Food purchased and handled goods moved in interstate commerce.

11.      Defendant BNP NY FOODS, INC d/b/a Essen Food is a domestic business corporation organized under the laws of the State of New York with a principal address at 290 Madison Avenue, New York, NY 10018.

12.      BNP NY FOODS, INC d/b/a Essen Food is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

13.      BNP NY FOODS, INC d/b/a Essen Food purchased and handled goods moved in interstate commerce.

14.     Defendant 27 MADISON AVENUE CORP d/b/a Essen Food is a domestic business corporation organized under the laws of the State of New York with a principal address at 60 Madison Avenue, New York, NY 10010.

15.     27 MADISON AVENUE CORP d/b/a Essen Food is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

16.     27 MADISON AVENUE CORP d/b/a Essen Food purchased and handled goods moved in interstate commerce.

17.     Defendant TEN WESTSIDE CORP d/b/a Essen Food is a domestic business corporation organized under the laws of the State of New York with a principal address at 160 Varick Street, New York, NY 10013.

18.     TEN WESTSIDE CORP d/b/a Essen Food is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

19.     TEN WESTSIDE CORP d/b/a Essen Food purchased and handled goods moved in interstate commerce.

20.     Defendant ESSEN22 LLC d/b/a Essen Food is a domestic business corporation organized under the laws of the State of New York with a principal address at 699 6th Avenue, New York, NY 10003.

21.     ESSEN22 LLC d/b/a Essen Food is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

22.     ESSEN22 LLC d/b/a Essen Food purchased and handled goods moved in interstate commerce.

23.     Defendant 100 BROAD STREET LLC d/b/a Essen Food is a domestic

business corporation organized under the laws of the State of New York with a principal

address at 100 Broad Street, New York, NY 10004.

24.     100 BROAD STREET LLC d/b/a Essen Food is a business engaged in interstate

commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

25.     100 BROAD STREET LLC d/b/a Essen Food purchased and handled goods

moved in interstate commerce.

### Owner/Operator Defendants

26.     The Individual Defendants are officers, directors, managers and/or majority

shareholders or owners of the Corporate Defendant and being among the ten largest

shareholders and/or LLC members, are individually responsible for unpaid wages under the

New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a),

NYLLC § 609(c).

27.     JANE DOE1, known to Plaintiff as "Mami" and the "Lady Boss", (1) had the

power to hire and fire employees, (2) supervised and controlled employee work schedules or

conditions of employment, (3) determined the rate and method of payment, and (4)

maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC

d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE

CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC

d/b/a Essen Food.

28.     Upon information and belief, JANE DOE1 is a matriarch of the Byun, Choi, or

their extended family.

29.     JANE DOE1 acted intentionally and maliciously and is an employer pursuant

to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2,

NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

30.     JANE DOE2, known to Plaintiff as the sister of "Mami" and the "Lady Boss' sister", (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

31.     Upon information and belief, JANE DOE2 is the sister of JANE DOE1.

32.     JANE DOE2 works at the office above AMICI 519 LLC d/b/a Essen Food.

33.     JANE DOE2 would watch the surveillance video to make sure that AMICI 519 LLC d/b/a Essen Food employees including the Manager Kevin are doing their job correctly.

34.     JANE DOE2 acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

35.     JOHN BYUN, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

36.     JOHN BYUN is the Alcohol Beverage Control Principal for 100 BROAD STREET LLC d/b/a Essen Food.

37.     JOHN BYUN is also the point in contact for at least some hiring inquiries he or the company put forth on behalf of Essen.

38.     JOHN BYUN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

39.     CHONG WON BYUN, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

40.     CHONG WON BYUN is the CEO of BNP NY FOODS, INC d/b/a Essen Food.

41.     CHONG WON BYUN acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

42.    WILLIAM BYUN, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

43.    WILLIAM BYUN is the Alcohol Beverage Control Principal for 27 MADISON AVENUE CORP d/b/a Essen Food.

44.    WILLIAM BYUN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

45.    MYONG AE BAEK BYUN, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON

AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22

LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

46.    MYONG AE BAEK BYUN is the wife of CHONG WON BYUN.

47.    MYONG AE BAEK BYUN acted intentionally and maliciously and is an

employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29

C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable

with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27

MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food;

ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

48.    K.C. CHOI, (1) had the power to hire and fire employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen

Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen

Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100

BROAD STREET LLC d/b/a Essen Food.

49.    K.C. CHOI acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, ,

NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519

LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE

CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a

Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

50.    SUNG CHOI, (1) had the power to hire and fire employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

51. SUNG CHOI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

52. YOUNG CHOI, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

53. YOUNG CHOI acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

54. KYEONG T HWANG, (1) had the power to hire and fire employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employee records at AMICI

519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON

AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22

LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

55.     KYEONG T HWANG is the CEO of 27 MADISON AVENUE CORP d/b/a

Essen Food.

56.     KYEONG T HWANG acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §

791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with

AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON

AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22

LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

57.     JOSEPHINE KIM, (1) had the power to hire and fire employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3)

determined the rate and method of payment, and (4) maintained employee records at AMICI

519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON

AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22

LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

58.     JOSEPHINE KIM is the Alcohol Beverage Control Principal for TEN

WESTSIDE CORP d/b/a Essen Food.

59.     JOSEPHINE KIM acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §

791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

60.    ANGIE PARK f/k/a Eun Ju Park, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

61.    ANGIE PARK f/k/a Eun Ju Park acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

62.    HAE YUNG PARK, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.

63.    HAE YUNG PARK is the Alcohol Beverage Control Principal for BNP NY

FOODS, INC d/b/a Essen Food.

64.     HAE YUNG PARK is the husband of ANGIE PARK.

65.     HAE YUNG PARK acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §

791.2, , NYLL § 2 and the regulations thereunder, and is jointly and severally liable with

AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON

AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22

LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a Essen Food.


## STATEMENT OF FACTS

### Defendants Constitute an Enterprise

66.     Upon information and belief, Corporate Defendants AMICI 519 LLC d/b/a

Essen Food; BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a

Essen Food; TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food;

and 100 BROAD STREET LLC d/b/a Essen Food are joint employers of Plaintiff and

constitute an enterprise as the term is defined by 29 USC §203(r) insofar as they share staff,

including Plaintiff's coworkers, assign staff from one location to the next depending on work

necessity and need, pay Plaintiff as the shareholders of the enterprise, advertise the Corporate

Defendants as an enterprise through the establishment of common protocol and uniforms, and

are otherwise engaged in related activities performed through unified operation and/or

common control for a common business purpose, and are co-owned by the same partners,

namely by the Byun family, the Choi family, and their extended Korean-American families.

67.     The families did cause for workers to be assigned from one location to the

next.

68.     For instance, many of the other workers employed by AMICI 519 LLC d/b/a

Essen Food at were originally working at TEN WESTSIDE CORP d/b/a Essen Food at 160

Varick Street, New York, NY 10013. Before moving to the newly-opened Essen on or about

October 15, 2016.

69.     These employees include the Manager Kevin, who became manager at 519

Eighth Avenue, New York, NY 10018, Plaintiff's coworkers Oscar and Enrique.

70.     From on or about October 15, 2016 to the present day, Plaintiff JORGE

SOLARES-GONZAGA was friends with the deli manager, Enrique, who worked at least part

of the time for Essen at 100 Broad Street, New York, NY.

71.     At all times relevant herein, as a result, AMICI 519 LLC d/b/a Essen Food;

BNP NY FOODS, INC d/b/a Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food;

TEN WESTSIDE CORP d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100

BROAD STREET LLC d/b/a Essen Food was, and continues to be, an "enterprise engaged in

commerce" within the meaning of FLSA.

72.     At all relevant times, the work performed by Plaintiff was directly essential to

the business operated by AMICI 519 LLC d/b/a Essen Food; BNP NY FOODS, INC d/b/a

Essen Food; 27 MADISON AVENUE CORP d/b/a Essen Food; TEN WESTSIDE CORP

d/b/a Essen Food; ESSEN22 LLC d/b/a Essen Food; and 100 BROAD STREET LLC d/b/a

Essen Food.

## **Wage and Hour Claims**

73.     Defendants committed the following alleged acts knowingly, intentionally and

willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

74.     At all relevant times, Defendants knowingly and willfully failed to pay

Plaintiff his lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

75.    While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

76.    Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

77.    Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

78.    At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

79.    Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

80.    Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

### Plaintiff JORGE SOLARES-GONZAGA

81.    From on or about March 01, 2015 to March 31, 2015 (for one month), Plaintiff JORGE SOLARES-GONZAGA was employed by Defendants to work as a food preparer by

BNP NY FOODS, INC d/b/a Essen Food at 519 Eighth Avenue, New York, NY 10018.

82.     From on or about the store's opening on October 15, 2016 to the present day Plaintiff JORGE SOLARES-GONZAGA was employed by Defendants to work as a food preparer by AMICI 519 LLC d/b/a Essen Food at 290 Madison Avenue, New York, NY 10018.

83.     At all relevant times, between October 15, 2016 to July 07, 2018, there are more than thirty (30) workers at 519 Eighth Avenue, New York, NY 10018, including a manager, four (4) cashiers, four (4) deliverymen, ten (10) deli workers downstairs, an additional nine (9) workers upstairs, and three (3) sushi chefs.

84.     In the beginning, when the store has just opened at Essen at 519 Eighth Avenue, New York, NY 10018, "Mr. Seo" was the manager.

85.     Thereafter, Kevin became the manager.

86.     From on or about March 01, 2015 to March 31, 2015, Plaintiff JORGE SOLARES-GONZAGA's regular work schedule ran from from 07:00 to 17:00, Monday through Friday for five (5) days a week for a total of 50.00 hours each week.

87.     On or about March 31, 2015, because Plaintiff JORGE SOLARES-GONZAGA refused to work an additional hour off the clock for free (till 18:00), with no additional pay, Plaintiff was fired by the Essen manager at 519 Eighth Avenue, New York, NY 10018.

88.     From on or about October 15, 2016 to August 31, 2017, Plaintiff JORGE SOLARES-GONZAGA's regular work schedule ran from from 05:00 to 15:00 for six (6) days; Defendants will additionally require Plaintiff to arrive fifteen (15) minutes for each workday, at 04:45, for an additional one and a half (1.5) hours each week for a total of 61.5

hours each week.

89.    From on or about September 01, 2017 to December 31, 2017, Plaintiff JORGE

SOLARES-GONZAGA's regular work schedule ran from from 05:00 to 13:00 on Mondays

through Fridays for eight (8) hours on Mondays through Fridays for five (5) days and forty

(40) hours, plus 05:00 to 11:30 on Saturdays for six and a half (6.5) hours; Defendants will

additionally require Plaintiff to arrive fifteen (15) minutes for each workday, at 04:45, for an

additional one and a half (1.5) hours each week for a total of 48 hours each week.

90.    From on or about January 01, 2018 to April 30, 2018, Plaintiff JORGE

SOLARES-GONZAGA's regular work schedule ran from from 05:00 to 11:30 on Mondays

through Fridays for six and a half (6.5) hours on Mondays through Fridays for five (5) days

and thirty two and a half (32.5) hours, plus 05:00 to 12:00 on Saturdays for seven (7) hours;

Defendants will additionally require Plaintiff to arrive fifteen (15) minutes for each workday,

at 04:45, for an additional one and a half (1.5) hours each week for a total of 41 hours each

week.

91.    From on or about May 01, 2018 to the present day, Plaintiff JORGE

SOLARES-GONZAGA's regular work schedule ran from from 05:00 to 12:30 on Mondays

through Fridays for seven and a half (7.5) hours on Mondays through Fridays for five (5) days

and thirty seven and a half (37.5) hours, plus 05:00 to 12:00 on Saturdays for seven (7) hours;

Defendants will additionally require Plaintiff to arrive fifteen (15) minutes for each workday,

at 04:45, for an additional one and a half (1.5) hours each week for a total of 46 hours each

week.

92.    From on or about March 01, 2015 to March 31, 2015, Plaintiff JORGE

SOLARES-GONZAGA was paid a flat compensation at a rate of five hundred dollars

($500.00) per week.

93.    From on or about October 01, 2016 to December 31, 2016, Plaintiff JORGE SOLARES-GONZAGA was paid a flat compensation at a rate of six hundred twenty dollars ($620.00) per week.

94.    From on or about January 01, 2017 to August 31, 2017, Plaintiff JORGE SOLARES-GONZAGA was paid a flat compensation at a rate of six hundred thirty dollars ($630.00) per week.

95.    From on or about January 01, 2017 to the present day, Plaintiff JORGE SOLARES-GONZAGA was paid a flat compensation at a rate of six hundred fifty dollars ($650.00) per week.

96.    From on or about April 01, 2018 to the present day, Plaintiff JORGE SOLARES-GONZAGA was asked to stay an extra hour at the store to clean the salad bar on Saturdays in return for an extra twenty five dollars ($25) in pay, for six hundred seven five dollars ($675.00) in pay.

97.    However, from on or about May 01, 2018 to the present day, Plaintiff JORGE SOLARES-GONZAGA was only paid twelve dollars ($12) for that hour, and receive six hundred sixty two dollars ($662) in pay.

98.    At all relevant times, Plaintiff JORGE SOLARES-GONZAGA was not paid overtime pay for overtime work.

99.    Throughout his employment, Plaintiff JORGE SOLARES-GONZAGA was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum

wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

100.    Throughout his employment, Plaintiff JORGE SOLARES-GONZAGA was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

101.    Throughout his employment, Plaintiff JORGE SOLARES-GONZAGA was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

## COLLECTIVE ACTION ALLEGATIONS

102.    Plaintiff brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings his NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

104.    All said persons, including Plaintiff, are referred to herein as the "Class."

105.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and

worked, the positions held, and the rate of pay for each Class Member is also determinable

from Defendants' records. For purpose of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided by

means permissible under said Fed. R. Civ. P. 23.

**Numerosity**

106.    The proposed Class is so numerous that joinder of all members is

impracticable, and the disposition of their claims as a class will benefit the parties and the

Court. Although the precise number of such persons is unknown, and the facts on which the

calculation of the number is presently within the sole control of the Defendants, upon

information and belief, there are more than forty (40) members of the class.

**Commonality**

107.    There are questions of law and fact common to the Class which predominate

over any questions affecting only individual class members, including:

a.    Whether Defendant employed Plaintiff and the Class within the meaning of the

New York law;

b.    Whether Plaintiff and Class members are promised and not paid at their

promised hourly wage;

c.    Whether Plaintiff and Class members are entitled to and paid overtime at their

promised hourly wage under the New York Labor Law;

d.    Whether Defendants maintained a policy, pattern and/or practice of failing to

pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e.    Whether Defendants maintained a policy, pattern and/or practice of failing to

provide requisite statutory meal periods;

f.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter;

g.      Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

h.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

108.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

109.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

110.    A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

111.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to

secure employment. Class actions provide class members who are not named in the complaint

a degree of anonymity which allows for the vindication of their rights while eliminating or

reducing these risks.

**STATEMENT OF CLAIMS**

**COUNT I.**
**[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage/ Unpaid Wages**
**Brought on behalf of the Plaintiff and the FLSA Collective]**

112.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

113.    At all relevant times, Defendants had a policy and practice of refusing to pay

Plaintiff in full, and the similarly situated collective action members, for some or all of the

hours they worked.

114.    The FLSA provides that any employer who violates the provisions of 29 U.S.C.

§ 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an

additional equal amount as liquidated damages.

115.    Defendants knowingly and willfully disregarded the provisions of the FLSA as

evidenced by failing to compensate Plaintiff and Collective Class Members at the statutory

minimum wage when they knew or should have known such was due and that failing to do so

would financially injure Plaintiff and Collective Action members.

**COUNT II.**
**[Violation of New York Labor Law—Failure to Pay Minimum Wage/ Unpaid Wages**
**Brought on behalf of Plaintiff and Rule 23 Class]**

116.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

117.    At all relevant times, Plaintiff is employed by Defendants within the meaning

of New York Labor Law §§ 2 and 651.

118.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

119.    Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

120.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff and the FLSA Collective]

121.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

122.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

123.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

124.    Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pay violated the FLSA.

125.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

126.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

127.    Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

128.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT IV.
**[Violation of New York Labor Law—Failure to Pay Overtime
Brought on behalf of Plaintiff and Rule 23 Class]**

129.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

130.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

131.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff and the class are entitled to.

132.    Defendant' failure to pay Plaintiff his overtime pay violated the NYLL.

133.    Defendants' failure to pay Plaintiff was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiff and Rule 23 Class]

134.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

135.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

136.    Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Keep Records
### Brought on behalf of Plaintiff and Rule 23 Class]

137.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

138.    Defendants did not maintain, establish and preserve Plaintiff's weekly payroll records for a period of not less than six years, as required by NYCRR § 146-2.1.

139.    As a result of Defendants' unlawful conduct, Plaintiff has sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

140.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff in order to

facilitate their exploitation of Plaintiff's labor.

141.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff were not in good faith.

**COUNT VII.**
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice**
**Brought on behalf of Plaintiff and Rule 23 Class]**

142.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

143.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

144.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

145.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

146.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Wage Statements
### Brought on behalf of Plaintiff and Rule 23 Class]

147.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

148.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

149.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

150.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's

wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

  j)  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

  k)  An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

  l)  An award of lost wages and liquidated damages equal to lost wages as a result of Plaintiffs' unlawful termination, compensatory damages, 9% simple prejudgment interest provided by NYLL, post-judgment interest, and attorney fees and costs;

  m)  The cost and disbursements of this action;

  n)  An award of prejudgment and post-judgment fees;

  o)  Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

  p)  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
July 8, 2018

      TROY LAW, PLLC
      *Attorneys for the Plaintiff, proposed FLSA*
      *Collective and potential Rule 23 Class*

      /s/ John Troy
      John Troy (JT0481)